Sherman **FETTERMAN** et al.,

v.

**Verda COPE, Jr., County Judge of Scott County, Tennessee, et al.**

**Civ. A. No. 7879.**

United States District Court,
E. D. Tennessee, N. D.
July 12, 1973.

Gerald Largen, Largen & Myers, Kingston, Tenn., for plaintiffs.

Clifton Sexton, Co. Atty., Oneida, Tenn., for defendants.

## MEMO AND ORDER

ROBERT L. TAYLOR, District Judge.

This action was brought under the United States Constitution and would be popularly called a reapportionment case. Plaintiffs are three members of the Quarterly County Court for Scott County and defendants are the County Judge and remaining members of said Quarterly Court. The Quarterly Court is the chief governing body of Scott County and consists of thirteen magistrates who represent the several civil districts into which the County is divided.

By an order entered February 19, 1971, this Court declared the Scott County Quarterly Court to be malapportioned and approved an apportionment plan that created five civil districts of unequal population. Equal representation was achieved by varying the number of magistrates elected from each civil district from two to four according to the district's population. The present Quarterly Court was elected pursuant to this plan.

The County Judge, who is the presiding officer of the Quarterly Court, wrote the County Attorney on February 23, 1971, requesting an interpretation of Chapter 2, Title 49, Tennessee Code Annotated. The request was answered by a letter of the District Attorney General dated April 8, 1971. That letter states that under T.C.A. 49–239—49–248, our order reapportioning the Quarterly County Court also abolished the "Scott County Board of Education" and created a new "Board of Education of Scott County." It further states that the Quarterly Court, therefore, is required to establish new school zones for the election of members to the new board. T.C.A. 49–239 provides:

"In all counties . . . wherein *the . . . school board* . . . is . . . elected from more than one (1) voting district . . ., and where by decree or judgment of any court of the United States . . . the scheme of apportionment . . . has been declared to be in violation of any provision of the United States constitution . . . such . . . school board . . . is hereby abolished . . . ." (Emphasis added)

The District Attorney General obviously misread the statute. It does not appear in the record that any court of competent jurisdiction has declared the Scott County Board of Education to be malapportioned.

On April 17, 1972, the Scott County Quarterly Court adopted a plan reapportioning both the school board and itself into seven co-extensive districts. Plaintiffs cast the three votes against this plan. They assert in the complaint that the plan violates our order of February 19, 1971, on the theory that the purpose of our order was to establish a permanent apportionment plan for the decade of the 1970's. They claim that the new plan violated the United States Constitution because the population of the new districts varies from 1400 persons to 2600 persons. They also allege that the Quarterly Court used different counting methods in developing the new plan in order to camouflage the malapportionment.

Defendants, the remaining members of the Scott County Quarterly Court, deny that the new plan is malapportioned or violates our order of February 19, 1971. They assert that their action was required by T.C.A. 49–239 et seq, that is, the malapportionment of the school districts required simultaneous reapportionment of the Quarterly Court under the proviso of T.C.A. 49–243.

As the Court reads T.C.A. 49–239 et seq, when a county school

board is judicially declared malapportioned, the board is abolished and a new board is created. Candidates for the new board must run-at-large at the next election unless the county quarterly court establishes districts of equal representation. If school districts of equal representation that correspond to the civil districts of the quarterly court cannot be created, then the county quarterly court must re-district itself at the same time it establishes districts for the new school board.

Purportedly to accomplish this end, the Scott County Quarterly Court appointed a committee of five to develop a new plan. Plaintiff Sherman Fetterman was on this committee but only appeared briefly at two out of its five meetings. In preparing the plan the committee relied principally on the United States 1970 Census for Scott County which divides the County into thirteen enumeration districts for the purpose of census taking. They first determined that equal representation would require approximately 2050 persons residing in each district. They then took the census population for each enumeration district, which varied from the number needed for equal representation, and actually counted the persons on the edge of the enumeration district who had to be deleted from or added to an adjacent enumeration district in order to achieve equal representation. This process was pursued for all civil districts except No. 6, which consists of what was left after appropriate additions to adjacent civil districts. Subtraction indicates that Civil District No. 6 should have approximately 2000 people. This is a reasonable method for re-districting in a rural area.

Plaintiffs' population figures for the new district were derived from statistics of the East Tennessee Development District (ETDD) and from a 1968 General Highway Map of Scott County prepared by the State of Tennessee. The ETDD report divides Scott County into five divisions that do not correspond to the seven new civil districts except in a generalized fashion in the more rural areas. This report indicates the average number of persons per housing unit in each of the five ETDD divisions of the County. The report attributes these statistics to the 1970 Census of Housing for Scott County. The 1968 General Highway Map shows the existence and location of dwellings in the County. No proof was offered as to the accuracy of these representations or as to the method by which the map was prepared. Since it was prepared by the Tennessee Department of Highways in cooperation with the United States Department of Transportation one can assume that the location of dwellings was of peripheral concern.

To determine the population of each new civil district plaintiffs counted the number of dwellings in each new civil district shown on the highway map and multiplied that figure by the "average persons per unit" factor of the ETDD division most closely corresponding to each new civil district. This method cannot accurately disclose the population of the new civil districts. It is obviously less accurate than the method employed by committee that proposed the new civil districts. In fact, except for Civil District No. 7, there is substantial agreement on the population of the various new districts.

Plaintiff Fetterman testified that he personally counted heads in new Civil District No. 7 and found 1400 persons residing in that district. He admitted that this was the only real discrepancy in the defendants' plan. When testifying about his method for determining population, he admitted that he had not paid much attention to detail. It was brought out on cross-examination that plaintiffs wanted to have the school board members elected at-large instead of by district. This may explain Fetterman's apparent boycott of the committee meetings concerned with re-districting.

From the evidence offered, we find that plaintiffs have failed to show by a preponderance of the evidence a constitutional violation. Even if

prompted by a misreading of a state statute, defendants' reapportionment efforts appear to have been conducted in good faith and their work product satisfies the Fourteenth Amendment. In the Court's opinion, plaintiffs' concern with equal representation was an afterthought. Their primary objective is a political one—at-large election of school board members. It appears that they are attempting to use the Court to assist them in their political efforts. This is not the function of a federal court. As previously indicated, this Court spent considerable time and effort in 1971 in reapportioning the Scott County Quarterly Court. That case bore political overtones. Accordingly, it is ordered that plaintiffs' case be, and the same hereby is, dismissed at their cost.